UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QEMQ, INC. d/b/a KELKOM,<br><br>         Plaintiff,<br><br>    v.<br><br>GEEKLAND USA LLC,<br><br>         Defendant. | No.  2:20-cv-02013-MCE-JDP<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiff Qemq, Inc. ("Plaintiff") seeks relief from Defendant Geekland USA LLC ("Defendant") arising from a business agreement between the parties.  Second Am. Compl., ECF No. 21 ("SAC").  Presently before the Court is Defendant's Motion to Dismiss Plaintiff's SAC or, in the alternative, Transfer Venue, which has been fully briefed.  ECF Nos. 22-2 ("Def.'s Mot."), 24 ("Pl.'s Opp'n"), 25 ("Def.'s Reply").  For the reasons set forth below, Defendant's Motion is GRANTED.[1]

///
///
///
///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Local Rule 230(g).

1

## BACKGROUND

### A.  Factual Background[2]

In 2016, Plaintiff entered into an agreement with Defendant to provide a "7 in[ch] tablet technology not using a battery power source" product/technology.  Plaintiff was physically located in Sacramento, California, at the time of negotiations, whereas Chandu Gudipalley, on behalf of Defendant, was physically located in Atlanta, Georgia, as well as India, China, and various other locations.  Throughout the negotiation process, Plaintiff informed Defendant that Plaintiff was physically located in Sacramento, California, and the contract was being executed by Plaintiff in Sacramento, California.  Defendant assured Plaintiff that its product/technology was a "good fit" for Plaintiff's intended use and that Defendant's product/technology had been successful with other similar customers.  Although Plaintiff initially doubted the efficacy of the product/technology, Plaintiff was ultimately convinced by Defendant's insistence that it would be effective.

In accordance with the parties' agreement, Plaintiff purchased a significant number of Defendant's product/technology between 2016 and 2019, which was delivered by Defendant to Plaintiff's Sacramento, California location.  Defendant's product/technology was then delivered and installed with Plaintiff's customers, many of whom were in northern California.  However, much of the product/technology failed, and Defendant did not provide any repairs or replacements.  Plaintiff was thus left liable to its dissatisfied customers, lost future sales, and suffered a loss of reputation with clients and the business community.

The SAC alleges that Plaintiff has performed all duties required of it under the terms of the parties' agreements, but Defendant has failed to provide the products/technology promised, repair or replace the defective product/technology, or provide justification for said actions or inaction, despite Plaintiff's repeated written and

---

[2] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's SAC.

oral demands/requests to do so.  Instead, Defendant allegedly instructed Plaintiff to take unnecessary, unproductive "corrective" actions, which only delayed Plaintiff's response to its customers and increased Plaintiff's damages.

### B. Procedural History

Plaintiff filed its original Complaint in this Court on October 8, 2020, asserting four causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation.  ECF No. 1.  Defendant filed its first motion to dismiss, or in the alternative, motion to change venue, but Plaintiff requested leave to amend to address any jurisdictional defects.  ECF Nos. 5, 8.  This Court granted Plaintiff's request for leave to amend and denied Defendant's motion as moot.  ECF No. 11.  On March 23, 2021, Plaintiff filed its First Amended Complaint ("FAC"), with federal jurisdiction premised on diversity of citizenship.  ECF No. 13.  Defendant filed its second motion to dismiss for lack of jurisdiction or, in the alternative, to transfer venue, which this Court granted with final leave to amend.  ECF Nos. 15, 19. On February 15, 2022, Plaintiff filed the operative SAC and Defendant subsequently filed the present Motion.  ECF Nos. 21, 22.

## STANDARDS

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)[3]

Federal courts are courts of limited jurisdiction, and are presumptively without jurisdiction over civil actions.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  The burden of establishing the contrary rests upon the party asserting jurisdiction.  Id.  Because subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived.  United States v. Cotton, 535 U.S. 625, 630

---

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

3

(2002). Accordingly, lack of subject matter jurisdiction may be raised by either party at any point during the litigation, through a motion to dismiss pursuant to Rule 12(b)(1). Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043–44 (9th Cir. 2009). Lack of subject matter jurisdiction may also be raised by the district court sua sponte. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999). Indeed, courts "have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." Id. at 514; see Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack, and a factual attack. Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Thus, a party may either make an attack on the allegations of jurisdiction contained in the nonmoving party's complaint, or may challenge the existence of subject matter jurisdiction in fact, despite the formal sufficiency of the pleadings. Id.

When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges jurisdiction based solely on the pleadings. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the motion to dismiss constitutes a facial attack, the Court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction. Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). In the case of a facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction. Id. However, in the case of a factual attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039.

In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations." Thornhill, 594 F.2d at 733 (internal citation omitted). The party opposing

the motion has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, "the plaintiff 'cannot rest on the mere assertion that factual issues can exist.'" Trentacosta v. Frontier Pac. Aircraft Ind., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)). Furthermore, the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists. McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); Thornhill, 594 F.2d at 733. If the nonmoving party fails to meet its burden and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### B. Motion to Dismiss Pursuant to Rule 12(b)(2)

A judgment rendered in violation of due process is void, and due process requires that a defendant be subject to the personal jurisdiction of the court. World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (citing Pennoyer v. Neff, 95 U.S. 714, 732–33 (1877); Int'l Shoe Co. v. Wash., 326 U.S. 310 (1945)). In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 671 (9th Cir. 2012) (citation omitted). However, when the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a "prima facie showing of jurisdictional facts" to withstand the motion to dismiss. Id. at 672 (citing Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006)). The court resolves all disputed facts in favor of the plaintiff. Wash. Shoe, 704 F.3d at 672.

Where, as here, there is no federal statute authorizing personal jurisdiction, the district court applies the law of the state in which the district court sits. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). California Code of Civil


Procedure § 410.10, California's long-arm statute, is "coextensive" with federal due process requirements. Id. Accordingly, the "jurisdictional analyses under state law and federal due process are the same." Id.

There are two categories of personal jurisdiction from a due process perspective: general and specific. A court has general jurisdiction over a nonresident defendant when the defendant's contacts with the forum are "substantial" or "continuous and systematic." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000), overruled in part on other grounds, Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc). The standard for establishing general jurisdiction is an exacting standard that requires the defendant's contacts to approximate physical presence in the forum state. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). Specific personal jurisdiction, on the other hand, exists when a defendant's "in-state activity is continuous and systematic and that activity gave rise to the episode-in-suit." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011) (citing Int'l Shoe, 326 U.S. 317) (internal quotation marks omitted). However, "the commission of certain 'single or occasional acts' in a State may be sufficient to render a [defendant] answerable in that State with respect to those acts. . . ." Id. (citation omitted).

### C.   Leave to Amend

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

1  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that
2  "the complaint could not be saved by any amendment."  Intri-Plex Techs., Inc. v. Crest
3  Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d
4  1006, 1013 (9th Cir. 2005)); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160
5  (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . .
6  constitutes an exercise in futility . . . .")).

## ANALYSIS

### A.     Motion to Dismiss Pursuant to Rule 12(b)(1)

In this case, federal jurisdiction is premised on diversity jurisdiction under 28 U.S.C. § 1332, which requires complete diversity of citizenship, with each plaintiff being a citizen of a different state from each defendant, and that the amount in controversy must exceed $75,000.  Regarding the first requirement, Defendant argues that Plaintiff failed to show diversity of citizenship between the parties.  See Def.'s Mot. at 9.  According to the SAC, Plaintiff is "a Delaware Corporation doing business in Sacramento County, California," whereas Defendant is "a limited liability corporation of unknown origin, duly organized and existing in the State of California, doing business in Sacramento County, California."  SAC ¶¶ 1–2.  These allegations are identical to those in the FAC, and this Court previously explained that such allegations suggest complete diversity may be lacking and that a limited liability company is not a citizen of the state of its principal place of business or state of incorporation but one "of every state of which its owners/members are citizens."  ECF No. 19, at 2 (quoting Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006)).  Although Plaintiff has not amended these allegations, Defendant has argued and provided evidence that it is a Georgia-based company.  See generally Gudipalley Decl., ECF No. 15-2 (declaration from Defendant's owner and chief executive officer); Ex. A, id., at 5 (Defendant's business

///

7

listing on the Georgia Secretary of State's website). As a result, the Court cannot conclusively determine at this time that the parties are not diverse.

As for the amount in controversy, Plaintiff's SAC alleges the following damages:

> CUSTOMER RETURNS & SERVICE COSTS
>
> Cancelled Orders & Refunds Order delivered, product failed, customer demanded full refund. $28,589
>
> Denied Credit Return to [Defendant]. Total dollars paid for failed [Defendant] product; [Defendant] refused refund. $94,597
>
> Warranty Costs on Behalf of [Defendant]. Out of pocket warranty support costs not reimbursed by [Defendant]. $19,800
>
> Lost Gross Margin dollars. Replacing [Defendant] with V2 Customer demanded free upgrade to install replacement V2 unit. $80,474
>
> Service Travel Costs to Resolve Issue On-Site. Service cost incurred to resolve the [Defendant] issues at all customers' sites. $134,938
>
> Engineering costs to determine product performance & diagnostic information[.] $68,275
>
> TOTAL OWED BY [DEFENDANT] $426,673

SAC ¶ 7; see also id. ¶ 5 ("In accordance with the parties' agreement, Plaintiff purchased a significant number of this product/technology from 2016 through 2019."). When a plaintiff files suit in federal court, the "legal certainty" test is used to determine whether the complaint satisfies the amount in controversy. Naffe v. Frey, 789 F.3d 1030, 1039 (9th Cir. 2015). "Under this test, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" Id. at 1040 (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938)). The legal certainty standard is met "when a rule of law or limitation of damages would make it virtually impossible for a plaintiff to meet the amount-in-controversy requirement." Pachinger v. MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 364 (9th Cir. 1986) (emphasis added).

///

Defendant contends that Plaintiff "does not cite any basis, contractual or otherwise, for recovery of the damages it seeks." Def.'s Mot. at 8. In support, Defendant points to the terms and conditions stated in its commercial invoices, which provides, in relevant part, the following:

> [Defendant] guarantees hardware products against defects in workmanship and material for a period of one (1) year from the date of shipment. Your sole remedy and [Defendant's] sole liability shall be for [Defendant] at its sole discretion, to either repair or replace the defective hardware product at no charge or to refund the purchase price. . . .

Ex. D, Gudipalley Decl., ECF No. 15-2, at 19 (dated April 1, 2017).[4]

Based on the above language, Defendant first argues that Plaintiff is limited to recover only the amounts actually paid to Defendant, which is less than the jurisdictional amount. Def.'s Mot. at 8; see Gudipalley Decl., ECF No. 15-2 ¶¶ 17–19 (stating that, between 2016 and 2019, "Plaintiff purchased $58,014 worth of Android equipment from [Defendant], through 15 purchase orders," and that "Plaintiff still owes [Defendant] $10,980 to date," having only paid $47,034). "However, more recent Ninth Circuit authority holds that a contractual damages limitation, and indeed any valid defense that might appear from the face of the complaint (e.g., statute of limitations), will not operate to preclude jurisdiction simply because it would reduce recovery below the $75,000 threshold." Aimsley Enters. Inc. v. Merryman, No. 19-cv-02101-YGR, 2020 WL 1677330, at *3 (N.D. Cal. Apr. 6, 2020) (citing Geo. Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1108 (9th Cir. 2010)); see also Agricola Cuyuma SA v. Corona Seeds, Inc., No. CV 17-8220 DMG (JPRx), 2018 WL 6185969, at *7 (C.D. Cal. Aug. 27, 2018) (rejecting challenge to amount in controversy "based on the Purchase

---

[4] Once again, Plaintiff contends in its Opposition brief that Defendant improperly relies on materials outside the pleadings and that if the Court does not exclude those materials, Defendant's Motion should be treated as one for summary judgment. Pl.'s Opp'n at 1–2. As this Court previously explained, in determining whether subject matter jurisdiction exists, the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039; see also McCarthy, 850 F.2d at 560 (stating that the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists). As a result, the Court may consider the Gudipalley Declaration in reaching its decision as to whether subject matter jurisdiction exists in this case.

1  Contracts' and seed bag labels' liability limitations language, which provides that
2  Plaintiffs may only recover the amount paid for the Seeds," because it "amounts to a
3  legal impossibility defense to subject matter jurisdiction.") (citing Riggins v. Riggins,
4  415 F.2d 1259, 1261 (9th Cir. 1969) ("[T]he legal impossibility of recovery must be so
5  certain as virtually to negative the plaintiff's good faith standing in asserting the claim.  If
6  the right to recovery is uncertain, the doubt should be resolved, for jurisdictional
7  purposes, in favor of the subjective good faith of the plaintiff.")).

Second, Defendant argues that the SAC "lacks any allegation that Plaintiff's alleged damages fall within the one-year limitation of Defendant's warranty."  Def.'s Mot. at 8.  However, according to the SAC,

> Defendant has failed to provide the products/technology promised, repair or replace the defective product/technology, or provide justification for said actions/inaction, <u>despite Plaintiff's repeated written and oral demands/requests to do so</u>.  Instead of correcting the failed/defective product/technology and/or replacing it with performing product/technology, Defendant instructed Plaintiff to take unnecessary, unproductive "corrective" actions, which only delayed Plaintiff's response to its customers and increased Plaintiff's damages.

SAC ¶ 9 (emphasis added).  Although no dates are given, as alleged, Plaintiff repeatedly informed Defendant of the product's issues, but Defendant failed to take either of the corrective actions set forth in the aforementioned terms and conditions.  Construing these allegations in a light most favorable to Plaintiff, it can reasonably be inferred that Plaintiff made its repeated requests and demands during the requisite one-year warranty periods.  Ultimately, Plaintiff has provided more sufficient allegations relating to the amount in controversy in the SAC and the Court cannot conclude to a legal certainty that the amount in controversy is really for less than the jurisdictional amount or that Plaintiff's calculations were not made in good faith.  Accordingly, the Court declines to dismiss Plaintiff's SAC pursuant to Rule 12(b)(1).

///
///

### B. Motion to Dismiss Pursuant to Rule 12(b)(2)

Defendant also moves to dismiss Plaintiff's SAC for lack of personal jurisdiction. "When a plaintiff relies on specific personal jurisdiction, he must establish that jurisdiction is proper for 'each claim asserted against a defendant.'"[5] Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004)). However, "[i]f personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same 'common nucleus of operative facts' as the claim for which jurisdiction exists." Id. (quoting Action Embroidery, 368 F.3d at 1181).

The Ninth Circuit employs a three-part test to determine whether a non-resident defendant has sufficient minimum contacts to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Wash. Shoe, 704 F.3d at 672. If the plaintiff satisfies the first two elements, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. Id. Exercising specific personal jurisdiction over a defendant is appropriate only if all three elements are established. Schwarzenegger, 374 F.3d at 805.

---

[5] Plaintiff does not challenge Defendant's argument that this Court lacks general personal jurisdiction over it. Even if Plaintiff intended to raise such a contention, Defendant's dealings with California are not sufficiently "substantial" or "continuous and systematic" to regard Defendant as "at home" in California. See, e.g., Bancroft, 223 F.3d at 1086; Daimler AG v. Bauman, 571 U.S. 117, 127 (2014). According to Defendant's evidence, it is a Georgia-based limited liability company that "does not operate any business in California" and "does not have any offices, places of business, telephone number, or mailing addresses in California." See Gudipalley Decl., ECF No. 15-2 ¶¶ 3, 5, 9–10. According to both Defendant and the Georgia Secretary of State's websites, Defendant's address is in Atlanta, Georgia. See Ex. A, id., at 5; Ex. C, id., at 8, 13, 15. Defendant also lists an Atlanta, Georgia address on its commercial invoices and purchase orders. See Ex. D, id., at 17–19. As such, general personal jurisdiction is inapplicable.

A plaintiff may satisfy the first part of the minimum contacts test by demonstrating that the defendant "either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum." Wash. Shoe, 704 F.3d at 672. However, purposeful availment and purposeful direction are "two distinct concepts." Schwarzenegger, 374 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract[,]" whereas "[a] purposeful direction analysis . . . is most often used in suits sounding in tort." Id.; see also Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 460 (9th Cir. 2007) (stating that the purposeful direction test "applies only to intentional torts, not to the breach of contract and negligence claims . . .").

The SAC raises two contract claims (breach of contract and breach of the implied covenant of good faith and fair dealing), as well as a non-intentional tort claim (negligent misrepresentation), and as such, the Court applies the purposeful availment test to those three claims. In such cases, courts "ask whether a defendant has 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Picot, 780 F.3d at 1212 (quoting Schwarzenegger, 374 F.3d at 802) (alterations in original). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." Schwarzenegger, 374 F.3d at 802; see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L.'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (stating that courts "typically inquire whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummate[s] [a] transaction' in the forum, focusing on the activities such as delivering goods or executing a contract.") (alterations in original).

> "[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." Boschetto [v. Hansing], 539 F.3d [1011,] 1017 [(9th Cir. 2008)]. Rather, there must be "actions by the defendant himself that create a 'substantial connection' with the forum State." Burger King [Corp. v. Rudzewicz], 471 U.S. [462,] 475 [(1985)] . . . . Merely "random, fortuitous, or attenuated" contacts are not sufficient. Id.

> (internal quotation marks omitted). A defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Sher [v. Johnson], 911 F.2d [1357,] 1362 [(9th Cir. 1990)] (quoting Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988)). In determining whether such contacts exist, [courts] consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Burger King, 471 U.S. at 479 . . . .

Picot, 780 F.3d at 1212. In applying the above standards, the Court finds that Plaintiff has not demonstrated specific personal jurisdiction over Defendant under the purposeful availment test.

According to Plaintiff, its "operation is based in Sacramento, California, Plaintiff was located in Sacramento, California when the relevant contracts were entered into with Defendant and Plaintiff was physically located in Sacramento, California when receiving the misrepresentations from Defendant." Pl.'s Opp'n, at 2–3 (citing SAC ¶ 4). Plaintiff also alleges that "[t]he product was delivered to Sacramento by Defendant" and that "[m]any of Plaintiff's customers, ultimately receiving the Defendant's faulty product, were/are in California." Id. at 3. However, none of these allegations speak to how Defendant purposefully availed itself of the privilege of doing business in California. Looking first at the parties' prior negotiations, Plaintiff initiated contact with Defendant and there are no allegations or evidence showing that Defendant traveled to California or that the parties communicated by means other than email, telephone, or text message. See Gudipalley Decl., ECF No. 15-2 ¶¶ 6, 16; Ex. B, id., at 7 (contact request from Plaintiff dated March 29, 2016). Furthermore, Defendant's website does not advertise to California specifically. Ex. C, id., at 9–16 (screenshot of Defendant's website). As such, this factor weighs against a finding of purposeful availment.

The terms of the agreement also do not weigh in favor of purposeful availment. For example, the invoices and purchase order provided to the Court do not "include a California choice of law provision, do[] not require solicitation of California customers, and do[] not mention California in any other way" except for shipping addresses on the

13

purchase order form.[6]  Skanda Grp. of Indus., LLC v. Capital Health Partner, LLC, No. 2:20-CV-10189-CAS-MRWx, 2020 WL 7630687, at *5 (C.D. Cal. Dec. 21, 2020); see Exs. D–F, Gudipalley Decl., ECF No. 15-2, at 18–26.  As for contemplated future consequences, although Plaintiff alleges an ongoing relationship given that it ordered Defendant's product over a period of three years, and that there was a one-year warranty for Defendant to either replace or repair defective product/technology, "foreseeability of injury in the forum does not in itself establish purposeful availment." Gray, 913 F.2d at 761.

Lastly, regarding the parties' actual course of dealing, none of the agreements were actually executed in California.  Plaintiff alleges that Defendant's product was delivered to Plaintiff in California and that product "was then delivered and installed with Plaintiff's customers, many of whom were located in Northern California."  SAC ¶ 5.  However, Plaintiff's own contacts and those with California-based customers are irrelevant as to whether Defendant has "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."  Sher, 911 F.3d at 1362.  Accordingly, the Court finds that Plaintiff has failed to establish that Defendant purposefully availed itself of California's laws which would warrant the exercise of specific personal jurisdiction.[7]  Because Plaintiff failed to satisfy this first element of the minimum contacts test, the Court need not address the remaining two

---

[6] Neither party has presented a formal written contract, and Defendant has only provided two invoices and a purchase order.  See Exs. D–F, Gudipalley Decl., ECF No. 15-2, at 18–26; Gray & Co. v. Firstenberg Mach. Co., Inc., 913 F.2d 758, 761 (9th Cir. 1990) (finding plaintiff failed to establish purposeful availment, in part, on grounds that "[t]here was no formal written contract, only a routine exchange of an invoice and a purchase order.").

[7] Even if the Court applies the purposeful direction test to Plaintiff's fraud claim, the result would be the same.  The purposeful direction test requires, in part, a defendant to expressly aim an intentional act at the forum state.  Schwarzenegger, 374 F.3d at 803 (quoting Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)).  A court must look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  Walden v. Fiore, 571 U.S. 277, 285, 291 (2014) (stating that the plaintiff's injury must be "tethered to [the forum state] in [a] meaningful way," and "the plaintiff cannot be the only link between the defendant and the forum.").  As previously explained, the facts that Plaintiff was physically located in California at the time of the alleged misrepresentations and that Defendant knew Plaintiff was located in California are insufficient to establish that Defendant has formed the requisite contacts with California.  Therefore, the purposeful direction test does not provide an alternate avenue to exercise specific personal jurisdiction over Defendant.

elements. As such, Defendant's Motion to Dismiss for a lack of personal jurisdiction is GRANTED.[8]

Should the Court grant Defendant's Motion to Dismiss, Plaintiff requests leave to amend. Pl.'s Opp'n, at 3–4. However, Plaintiff has not provided any explanation or indication as to how it would amend its claims, especially regarding jurisdictional issues. This Court has already given Plaintiff two opportunities to amend its claims on the question of federal jurisdiction in response to two motions to dismiss but aside from the amount in controversy, the allegations in all three of Plaintiff's complaints remain substantively the same. As a result, the Court finds that leave to amend would be futile and hereby dismisses the SAC without leave to amend.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss Plaintiff's SAC pursuant to Rule 12(b)(2), ECF No. 22, is GRANTED without leave to amend. The Clerk of Court is directed to enter judgment in favor of Defendant and to close the case.

IT IS SO ORDERED.

Dated:  September 14, 2022

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[8] The Court need not address Defendant's other bases for dismissal based on venue and failure to state a claim.